# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2245

_____

Danny Fischer

*Plaintiff - Appellant*

v.

Minneapolis Public Schools

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 11, 2015
Filed: July 8, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Danny Fischer sued Minneapolis Public Schools ("MPS") claiming that MPS violated the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA") by refusing to reinstate him as a Janitor Engineer. The district

court[1] granted MPS's motion for summary judgment.  Fischer appeals this decision, and we affirm.

I.

This employment dispute began with MPS's decision not to reinstate Danny Fischer as a Janitor Engineer after he failed a strength test.  Fischer worked for MPS as a Janitor Engineer from March 2008 until July 2010.  During this time, Fischer completed his duties satisfactorily.  On July 1, Fischer was laid off for fiscal reasons, but he was eligible to be recalled and reinstated later.

On December 8, 2011, Fischer received a letter from Mary Alfredson, a human-resources employee at MPS, explaining that Fischer's name had been reached on the list of former employees who were subject to recall and thus Fischer was eligible for a vacant Janitor Engineer position.  The letter further explained that Fischer's reinstatement was conditioned on his possession of a boilers license and his completion of a strength test created by Cost Reduction Technology ("CRT").  Alfredson's letter stated, "if you pass [the CRT test] at the required level and have a current boilers license, we will proceed with the recall from layoff."  Enclosed with the letter was a referral form that described the CRT test and included directions to the testing location.  The form explained that the CRT test measured the "maximum force-producing capability of muscles" and also advised Fischer to wear workout clothes, rest, and drink plenty of water.

On the day of the CRT test, Fischer arrived and read a document explaining the test.  He signed this document below a statement that said, "I have read the above information and I understand that I will be asked to give maximum effort and that I

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

will be performing short bouts of strenuous exercise." Fischer completed the test, which required him to operate a machine by performing repetitions using his arms, legs, and back. Fischer called Alfredson later that day to let her know he had completed the test, and Alfredson promised to contact him when the results arrived. Alfredson called Fischer several days later and left a voice message explaining that Fischer did not pass the CRT test and was accordingly being bypassed for recall. Fischer took this to mean that "I would not be getting my job back." Fischer returned the phone call and was again told that he "was not going to get [his] job back and that [Alfredson] was going to be sending [him] a termination letter."

Fischer's CRT test yielded a composite score of 197.5, which corresponded with medium strength, just shy of the 201 score needed for the medium-heavy strength designation that MPS required for its Janitor Engineers. Before requiring the CRT test for recalled Janitor Engineers in August 2011, MPS decided that, given the position's physical demands, a CRT strength level of medium-heavy was appropriate for its Janitor Engineers based on a job-task analysis. CRT created these strength-level categories based on Department of Labor definitions of physical-demand requirements. There are eight such strength levels in total, ranging from sedentary to very heavy. Of the eight strength levels, medium-heavy is the third highest and is just above medium. According to CRT's definitions, a medium-heavy strength worker is able to exert 51 to 75 pounds of force on occasion, up to 100 times in eight hours, and 31 to 45 pounds of force frequently, up to 300 times in eight hours. By comparison, a medium strength worker is able to exert 36 to 50 pounds of force occasionally and 22 to 30 pounds of force frequently. The CRT test accordingly was designed to test a worker's physical ability relative to a given position's demands. Here, the medium-heavy strength designation was designed to match the demands of a Janitor Engineer's various physical tasks such as lifting a full five-gallon bucket, carrying trash to outside dumpsters, and moving racks of chairs and tables.

After Fischer learned from Alfredson that he would not be getting his job back, Fischer spoke to several MPS employees and his union representatives about the possibility of a retest. According to Fischer, several MPS employees told him or his mother that he failed the CRT test because of his back and that because of his failed CRT score, he was more likely to be injured on the job. Specifically, Fischer alleges that MPS employees told him that he was not reinstated because of his back, that he was "incapable of pulling, carrying, pushing, or lifting a heavy load," and that his employment would "create[] a substantial risk of injury in the work place." Eventually, Fischer contacted the president of CRT and was told that he failed to achieve a composite score of 201 because his score on the portion of the test that measured back strength was lower than his score for his arms and legs. CRT's president explained that Fischer's back score was not poor "but it's up to the company if they want to re-hire you or not." During this time after Fischer learned he would not be reinstated, he spoke to multiple MPS managers and employees about the unfairness of his situation, and he requested the opportunity to retake the CRT test. MPS denied his request for a retest.

Fischer sued MPS alleging that MPS violated the ADA, *see* 42 U.S.C. § 12101 *et seq.*, and the MHRA, *see* Minn. Stat. § 363A.01 *et seq.*, by deciding not to reinstate him based on MPS's perception that Fischer was disabled. Fischer also alleged that MPS violated the MHRA by retaliating against him following his complaints about discrimination and requests for accommodation. The district court granted MPS summary judgment.

## II.

We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has the obligation to come

-4-

forward with specific facts showing that there is a genuine issue for trial." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013)) (internal quotation marks omitted). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial.'" *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 844 (8th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007) (quoting *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006)).

Fischer first claims that MPS violated the ADA and the MHRA by refusing to reinstate him following his failed CRT test. We generally analyze ADA and MHRA claims in the same way, with one exception that is irrelevant here. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). And Fischer does not urge any distinction between the two statutes as applied to this case. The ADA prohibits a covered employer from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that he "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment decision because of the disability." *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012). Fischer concedes that he is not actually disabled. Instead, Fischer argues that MPS regarded him as disabled because MPS believed that his back prevented him from doing the work of a Janitor Engineer. Under the ADA, being regarded as disabled by an employer can suffice to establish a disability within the meaning of the statute if the plaintiff shows that his employer subjected him to an adverse action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is

-5-

perceived to limit a major life activity." 42 U.S.C. § 12102(1), (3)(A). Physical or mental impairments include:

> (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine;
>
> (ii) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities;
>
> (iii) The phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

28 C.F.R. § 36.104.

In support of his argument that MPS regarded him as disabled, Fischer relies on statements that MPS employees allegedly made after he was told he would not be reinstated. Fischer points to statements of MPS employees who told him that he was not recalled because of his back, that he was "incapable of pulling, carrying, pushing, or lifting a heavy load," and that his employment would "create[] a substantial risk of injury in the work place." Fischer also notes that MPS made a statement to the Equal Employment Opportunity Commission that said:

> Mr. Fischer's [CRT test score] of 197.5 indicates his job performance would potentially endanger not only other employees but himself when being required to pull, or carry, or push, or lift a heavy load, or

-6-

otherwise. Thus, he [sic] being incapable of pulling, carrying, pushing, or lifting a heavy load, creates a substantial risk of injury in the workplace.

Even viewing these statements in the light most favorable to Fischer, they do not raise a material question of fact that MPS regarded Fischer as having a "physical or mental impairment." 42 U.S.C. § 12102(1). Rather, they merely show that MPS believed that its CRT test designated Fischer as medium strength and that a strength level of medium heavy was necessary for the Janitor Engineer position. As such, it was not unreasonable to observe that a worker who possesses less than the required strength to perform a physically demanding job faces an increased risk of injury. Such an observation does not lead to a reasonable inference that MPS regarded Fischer as having a physical impairment related to his back. *See S. Callaway R-II Sch. Dist.*, 732 F.3d at 886. Even though there may be sufficient evidence in the record to infer that MPS attributed Fischer's CRT-test score to his back strength, nothing in the record suggests that MPS regarded Fischer as suffering from a physiological disorder, cosmetic disfigurement, anatomical loss, or disease. *See* 28 C.F.R. § 36.104 (listing conditions that constitute a physical or mental impairment).

Fischer also takes issue with the accuracy of the CRT test, noting that the test results incorrectly listed his height and weight and also listed his position as Teacher rather than Janitor Engineer. But even assuming the CRT test was flawed, MPS's honest belief that Fischer possessed medium strength does not raise a genuine dispute of material fact that MPS regarded Fischer as disabled. A worker, like Fischer, who tests at medium strength places into the fourth highest of eight strength levels and is capable of lifting heavy objects on a regular basis. Indeed, under Fischer's view, MPS likely would regard its Cooks, Food Service Workers, and Special Education Assistants, whose positions required medium or light-medium strength, as disabled. Absent some showing of discriminatory intent, MPS was entitled to decide that different positions required different levels of strength. *See Ebersole v. Novo Nordisk Inc.*, 758 F.3d 917, 927 (8th Cir. 2014) (We "do not sit as a super-personnel

-7-

department that reexamines an entity's business decisions.") (quoting *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005)).

Simply put, MPS's belief that Fischer was capable of performing the physical labor of a medium strength worker is not equivalent to a belief that Fischer suffered a physical impairment such as a physiological disorder, cosmetic disfigurement, anatomical loss, or disease. *See* 42 U.S.C. § 12102(1); 28 C.F.R. § 36.104. Fischer was told that passing the CRT test was a condition of his reinstatement as a Janitor Engineer. He signed a document that explained that he was expected to give maximum effort throughout the entire test. And then he failed to meet the required threshold of medium-heavy strength. Fischer's attempt to cast his failure to meet a condition of reinstatement as disability discrimination is not supported by the record in this case. *Cf. Jenkins v. Med. Labs. of E. Iowa., Inc.*, 880 F. Supp. 2d 946, 960 (N.D. Iowa 2012) (explaining that an employee failed to raise a genuine dispute of material fact that she was perceived as disabled where she failed to attend counseling—a condition of her continued employment). That MPS did not regard Fischer as having a physical impairment is further supported by the fact that MPS was willing to let Fischer apply for other positions, or reapply for the Janitor Engineer position at a later date. Because Fischer fails to raise a genuine dispute of material fact that MPS regarded him as disabled, he has failed to establish a prima facie case of disability discrimination.[2]

Fischer's second claim is that MPS retaliated against him in violation of the MHRA by declining to reinstate him after he complained about unfair treatment and requested a retest. To make a prima facie retaliation claim under the MHRA, a plaintiff "must establish the following elements: '(1) statutorily-protected conduct

---

[2]Fischer also relies on the report of his proposed expert, Dr. Thomas Jetzer, to support his argument that MPS regarded him as disabled. But here, Dr. Jetzer's 2013 examination of Fischer has no bearing on whether MPS regarded Fischer as disabled in 2011 when it decided not to reinstate him.

by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.'" *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010) (quoting *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001)). Fischer's claim fails because he has not created a genuine dispute of material fact that there is a causal connection between the alleged protected conduct, his complaints and requests, and his alleged adverse employment action, MPS's refusal to reinstate him. During his deposition, Fischer explained that he first heard about his failed test when Alfredson left a voice message stating, "you didn't pass your results, so we're bypassing you on the list." Fischer correctly interpreted this to mean that he would not be reinstated. Fischer returned the phone call and was again told that he "was not going to get [his] job back and that [Alfredson] was going to be sending [him] a termination letter." Fischer only began complaining to MPS employees and asking for a retest after he learned he would not be reinstated. Because Fischer had learned of MPS's decision not to reinstate him before he made any complaints or requested a retest and because Fischer points to no other adverse action by MPS after his complaints, Fischer has failed to raise a genuine dispute of material fact as to the causal connection between his alleged protected conduct and the alleged adverse employment action of declining to reinstate Fischer. *See EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 973 (8th Cir. 2014).[3] In other words, Fischer only complained and requested a retest *after* learning that he would not be

---

[3]To the extent that Fischer's second claim could be interpreted as arguing that MPS failed to accommodate him by not permitting him to retest, this claim likewise fails because an employer has no duty to accommodate an employee who is not actually disabled. *See Duello v. Buchanan Cnty. Bd. of Supervisors*, 628 F.3d 968, 972 (8th Cir. 2010) (explaining, "'regarded as' plaintiffs are not entitled to reasonable accommodations because the ADA was not intended to grant reasonable accommodations to those who are not actually disabled").

reinstated, and so the decision not to reinstate him cannot be retaliatory. Accordingly, Fischer fails to establish a prima facie case of retaliation under the MHRA.[4]

III.

We affirm.

_____

<hr />

[4]Fischer also challenges the district court's decision not to address two claims that were first raised in Fischer's memorandum in opposition to summary judgment. Fischer claims that the CRT test made inappropriate medical inquiries and was an inappropriate pre-offer test. But Fischer failed to include these claims in his complaint, failed to file an amended complaint by the deadline, and did not later petition the court to amend his complaint. *See* Fed. R. Civ. P. 15; *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss."). Accordingly, these claims were not properly before the district court.