# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2863
_____

Allan Sanders,

*Plaintiff - Appellee*,

v.

Union Pacific Railroad Co.,

*Defendant - Appellant.*

------------------------------

Equal Employment Opportunity Commission,

*Amicus on Behalf of Appellee(s).*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: November 16, 2023
Filed: July 25, 2024
_____

Before COLLOTON,[1] BENTON, and SHEPHERD, Circuit Judges.
_____

_____

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

COLLOTON, Circuit Judge.

Allan Sanders sued his former employer, Union Pacific Railroad Company, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Sanders alleged that Union Pacific discriminated against him in two ways: first by imposing work limitations because of perceptions about his cardiovascular health, and second by failing to provide a reasonable accommodation during a related cardiovascular test. A jury returned a verdict for Sanders on both claims. The district court[2] denied Union Pacific's renewed motion for judgment as a matter of law. Union Pacific appeals, and we affirm.

I.

Allan Sanders worked for Union Pacific as a foreman general. This position required Sanders to oversee mechanics for Union Pacific's trains, known as carmen, and to assume their responsibilities if none of them were available to respond to a distressed train. Some of the carmen's responsibilities require significant physical exertion. One such responsibility is replacing knuckles—part of the equipment that links the cars of a train together—that weigh approximately 86 pounds each.

This physical component of Sanders's job became a problem only when he suffered complications relating to a bleeding ulcer. One of those complications was a brief cardiac arrest. Sanders was resuscitated, underwent a successful operation, and fully recovered. Before Sanders could resume his duties, Union Pacific required him to undergo a fitness-for-duty evaluation. Dr. Charbonneau, an associate medical director for Union Pacific, oversaw the evaluation.

---

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Of primary concern to this appeal, Union Pacific required Sanders to perform a "Bruce protocol" test—that is, a test where Sanders had to walk quickly or jog on a treadmill—to demonstrate his aerobic capacity. Sanders stopped this test early because of "fatigue." He explained to Union Pacific that his fatigue was due to pain in his knees caused by osteoarthritis rather than any issue with his heart.

Sanders requested that Union Pacific allow him to perform an alternate test on a bicycle because the bike would put less strain on his knees. Union Pacific told him that it would not accept the results of a bicycle test. Based on the results of the treadmill test, Dr. Charbonneau concluded that Sanders had low aerobic capacity and would be unable to perform strenuous labor. He thus imposed work restrictions that prevented Sanders from returning to work as a foreman general.

Sanders sued Union Pacific and alleged discrimination under the ADA. A jury returned a verdict for Sanders and awarded damages of $1,023,424.34. We review the denial of a motion for judgment as a matter of law *de novo*. We will reverse only if a reasonable jury, taking all reasonable inferences in favor of the verdict, would not have a legally sufficient evidentiary basis to reach its decision. Fed. R. Civ. P. 50(a)(1).

II.

At the outset, Union Pacific argues that Sanders waived any argument regarding cardiovascular concerns or knee problems because his complaint specifically identified only his ulcer. The Federal Rules of Civil Procedure, however, provide that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). Consent may be implied "where a party has actual notice of an unpleaded issue and has been given an adequate opportunity to cure any surprise resulting from the change in the pleadings" or "when evidence

relevant to an unpleaded issue has been introduced at trial without objection." *Trip Mate, Inc. v. Stonebridge Cas. Ins.*, 768 F.3d 779, 784-85 (8th Cir. 2014) (internal quotations omitted).

Sanders raised his knee problems and possible cardiovascular limitations before trial, and Union Pacific was afforded sufficient notice of the claims. Indeed, the company litigated the merits of those impairments in a motion for summary judgment and addressed the conditions in its proposed jury instructions. The final jury instructions included a definition of "disability" that included impairments that substantially limit cardiovascular and musculoskeletal functions. The company also did not object to the evidence received at trial regarding those impairments. Union Pacific thus impliedly consented to amend the pleadings, and the jury properly could base its verdict on Sanders's cardiovascular and orthopedic impairments.

Turning to Sanders's claim of disparate treatment, Union Pacific contends that the jury could not reasonably have concluded that by imposing work restrictions, the company "discriminate[d] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish this claim, Sanders was required to show that (1) he was "disabled," (2) he was "qualified," and (3) the employer imposed work limitations because of his disability. *See Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 988 (8th Cir. 2007). Union Pacific challenges the sufficiency of the evidence on all three elements.

The first issue is disability. "Under the ADA, being regarded as disabled by an employer can suffice to establish a disability within the meaning of the statute if the plaintiff shows that his employer subjected him to an adverse action 'because of an actual or perceived physical or mental impairment . . . .'" *Fischer v. Minneapolis Pub. Schs.*, 792 F.3d 985, 988 (8th Cir. 2015) (quoting 42 U.S.C. § 12102(3)(A)). Physical or mental impairments include "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . [the] cardiovascular." 29 C.F.R.

§ 1630.2(h)(1). Dr. Charbonneau admitted that he required the treadmill test and then refused to allow Sanders to return to work because of his concern that Sanders's heart was impaired. Based on this evidence that Union Pacific perceived Sanders as having a heart impairment and restricted him from work on that basis, a reasonable jury could conclude that the railroad regarded Sanders as being disabled. *See Fischer*, 792 F.3d at 988.

Union Pacific contends that it did not "regard" Sanders as disabled because it relied on Dr. Charbonneau's evaluation. The company relies on decisions from this court holding that restrictions based on the recommendations of a physician could not establish a perception of disability. The rationale in those cases was that the "regarded as" provision of the statute was designed to combat "archaic attitudes, erroneous perceptions, and myths," and a doctor's report does not suffer from those infirmities. *See Kozisek v. County of Seward*, 539 F.3d 930, 935 (8th Cir. 2008) (quoting *Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001)); *see also Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006).

The ADA Amendments Act of 2008, however, superseded the cited decisions. The amendments included a definition of "being regarded as having such an impairment," 42 U.S.C. § 12102(3), and added a rule of construction that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4)(A). These changes expanded the scope of "regarded as" claims. *See Brown v. City of Jacksonville*, 711 F.3d 883, 889 (8th Cir. 2013). The amended text provides no basis to limit the prohibition to discrimination based on "archaic attitudes, erroneous perceptions, and myths." *See* 29 C.F.R. pt. 1630 app. § 1630.2(*l*). Dr. Charbonneau's recommendation thus does not insulate the employer

from liability. A reasonable jury could have concluded that Union Pacific regarded Sanders as disabled.[3]

The second question is whether the jury reasonably concluded that Sanders was qualified. An employee is "qualified" if he can perform the essential functions of his job with or without reasonable accommodation. 42 U.S.C. § 12111(8). Union Pacific alleges that Sanders was unable to perform strenuous labor, including the essential task of lifting 86-pound knuckles. But the jury heard considerable evidence that Sanders could lift knuckles and perform other strenuous activities without accommodation. His doctors cleared him for work without lifting limitations. The carmen's job description states that they lift knuckles only "rarely" and "with assistance." Sanders testified that he regularly performed activities that were more strenuous than his work for Union Pacific. And no test reliably showed that Sanders could not lift 86 pounds. In light of this evidence, a reasonable jury could conclude that Sanders was qualified to perform the essential functions of a foreman general.

The third issue is whether the jury reasonably found that Union Pacific acted because of the employee's disability. The evidence showed that Union Pacific stopped Sanders from working as a foreman general because it believed he had diminished cardiovascular health, which is an impairment under the ADA. 29 C.F.R. § 1630.2(h)(1).

Union Pacific argues that Sanders failed to meet this element because he presented no evidence that the company was hostile toward disabled persons. But while our cases have spoken in terms of "discriminatory animus," the ADA does not require evidence of prejudice toward the disabled. Rather, "animus" in this context

_____

[3]Our decision in *Wisbey v. City of Lincoln*, 612 F.3d 667, 672-73 (8th Cir. 2010), relied on *Brunko* and *Breitkreutz*, but the events at issue in *Wisbey* occurred in 2007, *id.* at 669-71, and the 2008 amendments did not apply retroactively. *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010).

means simply that the employer was motivated by the employee's disability. *See St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012); *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018). Sanders satisfied the third element in this case because "the defendant acknowledges relying on the plaintiff's [impairment] in reaching the employment decision." *Norcross v. Sneed*, 755 F.2d 113, 116 (8th Cir. 1985); *see Dolgencorp, LLC*, 899 F.3d at 436. Sanders thus presented sufficient evidence for a reasonable jury to find that Union Pacific intentionally discriminated against him because of a perceived disability.

Union Pacific contends nonetheless that it was entitled to judgment based on a "direct threat" defense. An employer may defend against a claim of discrimination under the ADA on the ground that an employee poses a "direct threat" to the health or safety of others in the workplace—that is, because of his disability, he creates "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. §§ 12111(3); 12113(b). The jury was instructed on this defense and found that it did not apply.

To establish the defense, Union Pacific was required to show that its determination that Sanders posed a direct threat was: (1) the result of an individualized assessment, (2) objectively reasonable, and (3) based on the "most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r); *see Bragdon v. Abbott*, 524 U.S. 624, 650 (1998); *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571-72 (8th Cir. 2007).

There was sufficient evidence here for a jury to conclude that Union Pacific failed to prove the second and third elements of the defense. Sanders's medical expert testified that Union Pacific should have allowed Sanders to undergo a test on a bicycle in light of his knee condition and medication regimen. These factors, the expert explained, rendered the results from the treadmill test inaccurate. The expert opined that Union Pacific's decision to limit Sanders was "completely uncalled for,

completely wrong, and not based on any medical principles at all." A reasonable jury could have accepted this testimony and concluded that the company failed to prove that its decision was objectively reasonable and based on the best available objective evidence. The district court thus did not err in denying Union Pacific's motion for judgment as a matter of law on Sanders's claim of disparate treatment.

## III.

Union Pacific also challenges the jury's verdict on Sanders's failure-to-accommodate claim. Discrimination in violation of the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A). Employers are generally required to administer tests in a manner that accurately reflects the employee's ability rather than the limitations caused by his impairment. *See id.* § 12112(b)(7). Reasonable accommodation thus includes the "appropriate adjustment or modifications of examinations . . . for individuals with disabilities." *Id.* § 12111(9)(B).

Union Pacific argues that there was no legally sufficient basis for the jury to conclude that Sanders proved the elements of his claim—namely, that: (1) Union Pacific knew that Sanders was disabled; (2) Sanders requested an accommodation; (3) Union Pacific failed to engage in an "interactive process" with Sanders about possible accommodations; and (4) Sanders's disability could have been reasonably accommodated if the interactive process had taken place. *See Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 941 (8th Cir. 2019).

Sanders testified that he has arthritis in his knees that limits his ability to walk quickly enough on the treadmill to demonstrate accurately his aerobic capacity. This was sufficient evidence to allow the jury to conclude that Sanders is actually disabled—that he has a physical impairment (arthritis) that substantially limits a

major life activity (walking). 42 U.S.C. § 12102(1)(A), (2)(A). There was also ample evidence that Union Pacific knew of Sanders's knee problems: Union Pacific possessed Sanders's medical records; Sanders told Union Pacific employees that he was concerned about his knees before taking the treadmill test; and Sanders told Dr. Charbonneau later that his knees limited his performance on the treadmill test.

The record also supports a finding that Sanders requested an accommodation: he asked whether he could take the test on a bicycle rather than a treadmill. Once Sanders made this request, Union Pacific was required to engage in an "informal, interactive process" with him. *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 862 (8th Cir. 2006) (internal quotation omitted). That process is designed to identify the limitations caused by the employee's disability and potential reasonable accommodations to overcome those limitations. An employer hinders this interactive process when it "does not in good faith assist the employee in seeking accommodations," and "the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* at 862-63.

Here, Union Pacific did not assist Sanders in identifying a suitable accommodation for his impaired knees. Instead, a company employee informed Sanders that only results from a treadmill test would be acceptable. This directive eliminated the possibility of an accommodation. The record also included evidence showing that the company could reasonably have accommodated Sanders. Three physicians testified that a bicycle test is a medically appropriate alternative to the treadmill test for someone with impaired knees.

Union Pacific contends that Sanders did not show that he would have passed the bicycle test. Assuming that the employee must prove not only that a reasonable alternative test was available, but also that he would have performed satisfactorily on that test, we find no error. Sanders stopped the treadmill test only because of his knees. His doctors cleared him for work without restrictions. There was evidence

that he regularly performs physical activities, such as ranching, that are as strenuous as his work as a foreman general. A reasonable jury could conclude that Sanders would have performed well enough on the bicycle test to return to work.

In sum, the record includes a legally sufficient basis for the jury to conclude that Union Pacific did not engage in the interactive process, could have provided a reasonable accommodation if it had engaged in the required interaction, and thus discriminated by failing to accommodate Sanders. The district court did not err by denying Union Pacific's motion for judgment as a matter of law on Sanders's failure-to-accommodate claim.

\*      \*      \*

The judgment of the district court is affirmed.

_____