# IN THE COURT OF APPEALS OF IOWA

————————

No. 24-1436
Filed January 7, 2026

————————

**Michael McCane,**
Plaintiff–Appellant,

v.

**State of Iowa and Iowa Department of Corrections,**
Defendants–Appellees.

————————

Appeal from the Iowa District Court for Polk County,
The Honorable Jeanie K. Vaudt, Judge.

————————

**AFFIRMED**

————————

Amy Beck (argued) and Ashley Griffin of Fiedler Law Firm, P.L.C,
Johnston, attorneys for appellant.

Brenna Bird, Attorney General, Breanne A. Stoltze (argued), Eric Wessan,
Solicitor General, Assistant Solicitor General, and Christopher J. Deist and
Ryan P. Sheahan, Assistant Attorneys General, attorneys for appellee.

————————

Heard at oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Ahlers, J.

**AHLERS, Judge.**

Michael McCane appeals after a jury rejected his claims against his former employer for disability discrimination, failure to provide reasonable accommodation, and retaliation. We affirm.

## I. Background Facts & Prior Proceedings

A factfinder could reasonably find the following. McCane worked as a correctional officer at the Iowa Correctional Institution for Women (ICIW), which is operated by the Iowa Department of Corrections (DOC). In May 2020, McCane was injured at work. McCane provided the DOC with a note from his physician to limit his stair climbing and prohibit any running for thirty days. After a follow-up appointment the next month, McCane received the same restrictions from the physician for another thirty days. That December, McCane provided an updated list of restrictions from a physician. That list included a prohibition on lifting more than twenty pounds; avoidance of repetitive pushing, lifting, squatting, twisting, kneeling, pulling, bending, climbing, or stooping; and a direction to limit walking time to twenty minutes at a time. In response, the DOC assigned him to work in the master control center for several months.

In March 2021, McCane provided the DOC with updated restrictions that included the prior restrictions but limited his walking to ten minutes at a time. The letter from his physician explained that McCane would require accommodation until he underwent corrective surgery. The DOC informed McCane he needed to complete a request-for-reasonable-accommodation form. McCane completed the form in conjunction with his physician, who wrote that McCane was "unable to stand or walk longer than 5 or 10 minutes" and was "unable to respond to emergencies, physically restrain prisoners." The physician went on to explain "any activity requiring physical

enforcement will be compromised in safety and effectiveness due to the low back condition well documented in his medical records." The physician's notations confirmed that McCane would require accommodation until he had surgery and anticipated that McCane would require accommodation for "nine to twelve months including recovery after surgery."

Despite his physician's notation regarding expected surgery, McCane told others that he did not intend to have the surgery or was at least unsure of whether he would get surgery. The associate warden and a human resources representative met with McCane. They asked him whether he intended to undergo surgery, and he informed them that he hadn't scheduled anything yet.[1] They told him that the DOC would no longer provide him with accommodations for his work restrictions given the indeterminant time period of those accommodations and if he was unable to perform the position of correctional officer without accommodations, then the DOC would terminate his employment for medical reasons. When McCane did not resume working without accommodation, his employment was terminated for medical reasons.[2]

McCane eventually brought this action against the State of Iowa and the DOC, raising claims of disability discrimination, failure to accommodate,

---

[1] At trial, McCane testified that he did not want to put off surgery and that no one from the DOC talked to him about his plans for surgery.

[2] At trial, the associate warden described McCane's termination as him being "medically removed from payroll." A human resources representative testified that the DOC considers "termination" a disciplinary action unlike "medical separation."

and retaliation under the Iowa Civil Rights Act.[3]  At trial, McCane sought to introduce evidence related to another DOC employee who worked at a different DOC facility and sued the DOC for failing to provide permanent accommodation, specifically assignment to the control center, and was successful.  Via an order in limine, the district court did not permit admission of any evidence of those proceedings, concluding that the plaintiff in the other suit was not a proper comparator to McCane.[4]  When a DOC employee testified that the DOC had never permanently accommodated an employee with an assignment to the master control center, McCane's counsel attempted to cross-examine the witness on that assertion.  But defense counsel objected, citing the court's order in limine prohibiting evidence of the other employee's legal proceedings.  The court sustained the objection.  The court likewise prohibited evidence of other employees receiving a long-term assignment to the master control center at different DOC facilities.

When preparing to submit the case to the jury, the parties disagreed as to the language for the marshaling instruction for the failure-to-provide-reasonable-accommodation claim.  Ultimately, the court declined to use either party's proposed language and instead used language chosen by the court.  Following deliberations, the jury returned a verdict in favor of the defendants.

McCane appeals.  He challenges the marshaling instruction for the failure-to-provide-reasonable-accommodation claim and the exclusion of

---

[3] McCane amended his petition to add a claim for wrongful discharge in violation of public policy, but he voluntarily dismissed that claim before trial.  That claim is not at issue on appeal.

[4] The court initially made this ruling off the record and then memorialized it the next day when prompted by McCane's counsel.

evidence about other accommodations requested by and given to other DOC employees.

## II. Jury Instruction

We begin by addressing McCane's challenge to the failure-to-accommodate marshaling instruction. "We review the district court's jury instructions for prejudicial error, considering the instructions as a whole." *Des Moines Civ. and Hum. Rts. Comm'n v. Knueven*, 988 N.W.2d 694, 700 (Iowa 2023). "There is no reversible error if the instructions have not misled the jury." *Id*. at 701. McCane argues that the following failure-to-accommodate marshaling instruction improperly adopted the DOC's theory of the case and removed a critical factual issue from the jury's consideration:

1. At the time of the events in question, Plaintiff had a disability, as stipulated to by the parties in Instruction No. 1.

2. Defendants knew of Plaintiff's disability.

3. Plaintiff could have performed the essential functions of the job of correctional officer at the time Defendants medically separated him from payroll if Plaintiff had been provided with an accommodation of:

    a. Assignment to the master control post with exemption from responding to emergency calls and exemption from engaging in physical enforcement activities with inmates; or

    b. Additional time off without pay.

4. The requested accommodation(s) would have been reasonable; and

5. Defendants failed to provide a reasonable accommodation identified by Plaintiff and/or failed to engage in good faith in an interactive process with Plaintiff as described in [a later instruction] to provide Plaintiff with any other reasonable accommodation.

5

If Plaintiff has failed to prove any of these elements, your Verdict on Plaintiff's failure to provide reasonable accommodation claim must be in favor of Defendants. If Plaintiff has proved all of these elements, you shall then consider the defense of undue hardship explained in [a later instruction].

McCane first takes issue with the use of the phrasing "medically separated him from payroll" in the instruction because the DOC used that phrasing throughout its defense. McCane proposed a marshaling instruction that used the term "terminated" instead. This difference in phrasing does not amount to prejudicial error. We agree that the submitted phrasing is softer and less direct than that proposed by McCane. But that does not make it incorrect or prejudicial to McCane, especially given the testimony that the DOC treats medical separation from payroll differently than termination for cause if an employee sought to be rehired. The instruction as given still conveyed the necessary information to the jury.

The core of McCane's challenge to the instruction centers around the emphasized portion of the instruction below:

3. Plaintiff could have performed the essential functions of the job of correctional officer at the time Defendants medically separated him from payroll if Plaintiff had been provided with an accommodation of:

a. Assignment to the master control post **with exemption from responding to emergency calls and exemption from engaging in physical enforcement activities with inmates**;

McCane argues that such an exception would not be necessary for someone assigned to the master control center, so the exception should not have been included in the instruction. *See State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009) (requiring jury instructions to be supported by substantial evidence).

But a former correctional officer testified that an officer working in the master control center could be called out to respond to a fight or emergency when two officers are assigned to the control center. The associate warden explained that officers, even those assigned to the master control center, are expected to respond to emergencies while on break. So, it is conceivable that a correctional officer assigned to the master control center could be called upon to respond to emergencies or have physical contact with an inmate in certain circumstances. And this exception request was made by McCane's physician on the request-for-reasonable-accommodation form. So, the inclusion of the exception is supported by substantial evidence. *See id.*

The crux of McCane's complaint is based on his argument that the inclusion of the exception informed the jury that responding to emergency calls and engaging in physical enforcement activities with inmates were essential functions of the master control center position. He argues that inclusion of the exception in the instruction informed the jury that he required an exception from the essential functions of a correctional officer working at the master control center, unlawfully removing that determination from the jury. *See Sanders v. Union Pacific R.R. Co.*, 108 F.4th 1055, 1061 (8th Cir. 2024) (recognizing whether an employee can perform the essential functions of a job with or without reasonable accommodation is a fact question to be determined by a jury). While we agree with McCane that what amounts to an essential function of a position is a fact question to be answered by the jury, we disagree with his interpretation of the instruction.

We consider the jury instructions holistically, not in isolation. *Knueven*, 988 N.W.2d at 701. Following our review of all the instructions, it is clear that the question of what amounted to essential functions of a correctional officer was left for the jury to determine. A separate instruction

from the challenged marshaling instruction provided the jury with this additional explanation:

"essential functions" of a position as referenced in [the failure-to-accommodate marshaling instruction] are those that bear more than a marginal relationship to the job at issue.

The following may be considered in determining the essential functions of a job position:

1. The employer's judgment as to which functions of the job are essential;

2. Written job descriptions;

3. The amount of time spent on the job performing the function in question;

4. Consequences for not requiring the employee to perform the function;

5. The work experience of employees who have held the job;

6. The current work experience of employees in similar jobs;

7. Whether the reason the position exists is to perform the function;

8. Whether there are a limited number of employees available among whom performance of the function can be distributed;

9. Whether the function is highly specialized and the employee in the position was hired for the employee's expertise or ability to perform the function;

10. How Plaintiff actually functioned in the workplace.

No single factor should control your decision. The employer's judgment as to what functions are essential is not

conclusive. You should consider all of the evidence in deciding whether a job function is essential.

We have no doubt that the jury read the instructions in their entirety, as it was instructed, and understood that it was up to them to determine what amounted to the essential functions of a correctional officer using the ten factors contained in the above-quoted instruction. It was then for the jury to decide whether McCane could perform those essential functions of a corrections officer if he was assigned the master control post and was not required to "respond[] to emergency calls" or "engage[] in physical enforcement activities with inmates." The instructions made that task clear—they do not state that responding to emergency calls or physical enforcement activities with inmates are essential functions of the master control center position. Contrary to McCane's contentions otherwise, the marshaling instruction simply did not tell the jury what the essential functions of a correctional officer were or what the district court believed the essential functions were.[5]

Finally, McCane contends that the district court should have used his proposed marshaling instruction, highlighting the benefits of his proposed instruction over that actually submitted to the jury. But a party is not entitled to its preferred phrasing. "As long as the issues involved are adequately covered, the court may choose its own language." *Hutchinson v. Broadlawns Med. Ctr.*, 459 N.W.2d 273, 275 (Iowa 1990). Here, the court decided against adopting either party's proposed marshaling instruction and instead

---

[5] And to the extent that McCane argues that the marshaling instruction placed undue emphasis on the fact that he asked for accommodations to not respond to emergencies or engage in physical enforcement activities with inmates, *see Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 287 (Iowa 1994), we disagree.

fashioned its own that correctly stated the law. The court did not err by doing so.

We reject McCane's challenges to the marshaling instruction including any not explicitly discussed in this opinion.

## III.    Exclusion of Evidence

We next address McCane's evidentiary challenges regarding experiences of other DOC workers. "We review evidentiary rulings for abuse of discretion." *State v. Montgomery*, 25 N.W.3d 309, 313 (Iowa Ct. App. 2025). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable, including when the court bases its conclusions on an erroneous application of the law." *Id.* (cleaned up).

McCane argues he should have been permitted to introduce evidence about a correctional officer at a different DOC facility, Kristine Sink, who sought a permanent control center assignment as an accommodation. Specifically, he sought to introduce a district court order entered following litigation initiated by Sink.[6] Sink and the DOC settled while the case was on appeal, vacating the order. The settlement agreement provides that the settlement was "not to be construed as an admission of liability or wrongdoing on the part of the State of Iowa or any of the Released parties," noting "that the State of Iowa and all Released Parties expressly deny any such liability or wrongdoing." The district court ruled all evidence regarding

---

[6] Although McCane identifies the order entered in the Sink litigation as proposed exhibit 38A, we are unable to find the order in our record. Despite not having access to the order, we have enough information to address the issue at hand.

10

Sink and her legal proceedings would not be admitted because she was not a sufficient comparator to McCane.

As to the district court's initial determination that evidence about Sink and her legal proceedings would not be admitted, we conclude that the district court did not abuse its discretion. While the court generally stated that Sink was not a sufficient comparator to McCane, we take this to mean the court considered that the two had different bases for seeking an accommodation of assignment to a control center position and they worked at different DOC facilities. As such, injecting evidence about Sink and her proceedings would not be directly on point and would have the tendency to confuse the jury. Moreover, the Sink order that McCane sought to introduce was vacated by the settlement agreement, which explicitly stated that the DOC was not admitting any wrongdoing. So, we cannot say the district court abused its discretion when it did not permit admission of the Sink evidence.

But McCane mainly takes issue with the district court's later ruling regarding Sink and other DOC correctional officers employed at other DOC facilities. Defense counsel questioned a DOC employee whether a DOC correctional officer had ever been permanently assigned to the master control center, and the employee answered in the negative. On cross-examination, McCane's counsel confirmed that the witness's prior testimony that no DOC correctional officer had been permanently assigned to the control center and then asked if any DOC correctional officer had requested such an accommodation, to which the employee responded, "We've—they don't ask for permanent accommodation. They have asked to be put in [the] control center before, yes." Anticipating McCane's counsel's line of questioning would lead to questions about Sink, defense counsel objected, citing the court's prior ruling. McCane's counsel then argued that defense counsel

11

"opened the door" to the questioning. Defense counsel highlighted that he never asked about any DOC correctional officer requesting a permanent accommodation, just whether a permanent accommodation for a specific assignment had ever been made. The court sustained the objection.

McCane believes this was an abuse of discretion because it allowed the DOC to leave "the jury with the false impression that DOC had never been challenged on its refusal to accommodate permanent restrictions." He argues "the district court should have applied the curative admissibility rule to allow [McCane] to rebut defendants' misleading testimony regarding their history of accommodating permanent restrictions." *See State v. Huser*, 894 N.W.2d 472, 506–07 (Iowa 2017) ("The doctrine of curative admissibility . . . applies when inadmissible evidence has been entered into the record and the other party seeks to admit further inadmissible evidence to cure the error."). We reject McCane's argument.

McCane never made an offer of proof as to what evidence he sought to introduce as rebuttal evidence. First, he failed to make an offer of proof regarding what questions he wanted to pose to the DOC employee as rebuttal evidence. Nor was that clear from the questioning to which defense counsel objected. The entire exchange is as follows:

Q. You were asked whether the DOC has ever permanently accommodated somebody in the master control room. Do you recall that question? A. Yes.

Q. And I believe your answer was no; is that right? A. As far as I know that's correct.

Q. Have you had that request before? A. Have I had what request before?

Q. To be permanently accommodated in master control.
A. We've—they don't ask for permanent accommodation. They have asked to be put in control center before, yes.

Q. Sure. And you know that it would be—

[Defense counsel]: Objection, Your Honor, with the motion in limine.

[Plaintiff counsel 1]: Your Honor, permission to approach.

[Plaintiff counsel 2]: Judge, he opened the door.

[Defense counsel]: Your Honor, I asked whether an employee had ever been accommodated permanently in master control. I don't believe that goes into requests, again, the topics related to the motion in limine and the court's ruling just a minute ago.

THE COURT: Okay. I'm sustaining the ruling. Ask another question, Counsel.

So we do not know what testimony McCane sought to elicit from the DOC employee as rebuttal or impeachment evidence under the curative admissibility rule.

And McCane's appellate advocacy does not provide clarification either. In his appellate brief, he argues he should have been permitted to continue to question the DOC employee for the jury to learn: "(1) Defendants had been sued for denying permanent restrictions, (2) they lost at trial, and (3) they were ordered to stop automatically denying such accommodations" through evidence about Sink's litigation with the DOC. But at oral argument, McCane's counsel changed course and stated for the purposes of curative admissibility,

what we were wanting to do was at least ask the question as to whether or not anyone had been assigned to master control

13

permanently as Ms. Sink in her situation, she had been assigned there for two years with a no inmate-contact restriction, that would have been a reasonable way to rebut the evidence in this situation. There could have been a limitation ... we can recognize that there are limitations as to curative admissibility.

So we are left to question whether McCane sought to ask the DOC employee limited questions about Sink's long-term assignment to the control center or instead wanted to delve into all of Sink's litigation with the DOC as his appellate briefing suggests. With that question left unanswered, we cannot meaningfully evaluate McCane's appellate claim. *See State v. Lange*, 531 N.W.2d 108, 114 (Iowa 2014) ("This court considers offers of proof so important that we require them to preserve error. We will not presume prejudice when the answer to the question is not obvious and the proponent made no offer of proof. Nor will we consider error preserved without such an offer unless the whole record makes apparent what is sought to be proven." (internal citations omitted)).

As to testimony from DOC correctional officers employed at other facilities, McCane also failed to make an offer of proof. McCane's counsel requested to make an offer of proof by attorney statement.[7] But the problem is that counsel never made the statement telling the court what the witnesses would say if called to testify. Looking at the remaining record, *see id.* (concluding error is still preserved if the record makes apparent what was sought to be admitted), we note that McCane provided some information about these proposed witnesses in his resistance to the DOC's motions in limine. He stated that they all worked at different DOC facilities and two worked in the master control center of their respective facilities "for years at

---

[7] According to counsel, the witnesses would have had to travel several hours to provide an offer of proof.

a time—even though they had no disabilities." And he noted that Sink had been assigned to the control center at her facility for two years when she had no medical restrictions. We assume that this is the information that McCane sought to elicit from the proposed witnesses.

But as the DOC points out, admission of evidence under the curative admissibility rule is still discretionary. And the district court did not abuse its discretion when it did not permit the testimony. It was reasonable for the court to conclude that the proposed witnesses worked at different facilities and therefore were not in a sufficiently similar situation to McCane to make their testimony relevant or to conclude their testimony would be potentially confusing to the jury. Moreover, even without the excluded testimony, the record was replete with evidence of long-term control center assignments at the ICIW where McCane actually worked. One correctional officer testified that the person who trained her had been assigned to the control center consistently for six years when he did not have any medical restrictions. She had been assigned to the ICIW control room for ten months as well. Another correctional officer had been assigned to the control center through 2020 and 2021. So testimony from the DOC correctional officers from other facilities was not necessary to rebut the DOC's employee's testimony about no one receiving a long-term assignment to the control center. The district court did not abuse its discretion in excluding the proposed testimony, and, even if it had abused its discretion, any error was harmless.

## IV. Conclusion

The failure-to-accommodate marshaling instruction did not misstate the law or adopt the DOC's theory of the case, nor did it strip the jury of its fact-finding role. The district court did not abuse its discretion by excluding evidence about Sink's prior legal proceedings against the DOC or testimony

15

about other correctional officers' long-term control center assignments at other DOC facilities.  Accordingly, we affirm.

**AFFIRMED.**