# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3858

_____

Melvin A. Morriss, III

*Plaintiff - Appellant*

v.

BNSF Railway Company, a Delaware corporation

*Defendant - Appellee*

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellant(s)*

Chamber of Commerce of the United States

*Amicus on Behalf of Appellee(s)*

AARP

*Amicus on Behalf of Appellant(s)*

Equal Employment Advisory Council; National Federation of Independent
Business Small Business Legal Center

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 17, 2015
Filed: April 5, 2016
_____

Before WOLLMAN, BRIGHT, and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Melvin Morriss appeals from the district court's[1] order granting BNSF Railway Company's (BNSF) motion for summary judgment and denying his motion for partial summary judgment on his claims that BNSF refused to hire him on account of his obesity and thereby discriminated against him in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553, and the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. §§ 48-1101 to -1126.[2]  We affirm.

Morriss applied for a machinist position with BNSF in March 2011 and was extended a conditional offer of employment.  Because the position was safety sensitive, however, the offer of employment was contingent on a satisfactory medical review.  Morriss completed BNSF's medical questionnaire, reporting that he was 5'10" tall and weighed 270 pounds, that he had once been diagnosed as "pre-diabetic" but was not currently diabetic, that he had taken appetite-suppressant medication to

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]Because disability-discrimination claims under the NFEPA are analyzed under the same framework as claims brought under the ADA, we need not conduct a separate analysis of Morriss's state-law claims.  See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 723 (8th Cir. 2002).

lose weight but not to address any health concerns, that he considered his overall health "good," and that he experienced no difficulties or limitations in his daily activities. In response to BNSF's request for additional information concerning Morriss's possible history of diabetes, Morriss's doctor submitted treatment records for the first three months of 2011, which did not reflect a current diagnosis of diabetes or any symptoms of diabetes.

In May 2011, BNSF doctors conducted two physical examinations of Morriss: at one, Morriss weighed 285 pounds and had a body mass index (BMI) of 40.9; at the other, he weighed 281 pounds and had a BMI of 40.4. BNSF's policy was not to hire a new applicant for a safety-sensitive position if his BMI equaled or exceeded 40. Because Morriss's BMI exceeded BNSF's qualification standards, the company's medical department notified Morriss by email that he was "[n]ot currently qualified for the safety sensitive Machinist position due to significant health and safety risks associated with Class 3 obesity ([BMI] of 40 or greater)." BNSF then revoked its conditional offer of employment.

Morriss filed this suit in January 2013, alleging that BNSF discriminated against him when it revoked its offer of employment based on his obesity. He claimed that his obesity was an actual disability under the ADA and that BNSF regarded his obesity as an actual disability. BNSF filed a motion for summary judgment, arguing that Morriss's obesity did not meet the definition of disability under the ADA because it was not a "physical impairment" and that BNSF did not regard his obesity as a disability. Morriss moved for partial summary judgment only on his claim that BNSF regarded his obesity as a disability.

The district court found that Morriss had failed to provide any evidence to support his claim that his obesity was an actual disability under the ADA. The court first noted that to succeed on this claim, Morriss was required to show that his obesity was a physical impairment, defined under the ADA as a physiological disorder or

condition that affects a major body system. The court noted that Morriss had unequivocally denied suffering from any medical impairment or condition on BNSF's medical questionnaire, had described his health as "good," and had disclosed no difficulties or limitations in his daily activities. Morriss had instead stated that he did not believe he had a physical disability, that he was not aware of any underlying condition that contributed to his obesity or to his inability to lose weight, and that his weight caused no physical limitations. Morriss's personal doctor, who also testified as Morriss's expert witness, stated that Morriss did not suffer from any medical condition that caused his obesity or any medical condition associated with obesity, such as diabetes, hypertension, cardiac disease, or sleep apnea; that Morriss had no limitations placed on his activities; and that Morriss was capable of performing the duties of the machinist position. Morriss also admitted that BNSF had received no information to contradict any of the responses he and his doctor had provided regarding his health and medical history. Based on this evidence, the district court found that Morriss's claim that his obesity was an actual disability necessarily failed because he did not prove that it was a physical impairment, *i.e.*, a physiological disorder or condition that affected one or more major body systems.

The court also granted BNSF summary judgment on Morriss's claim that the company regarded him as having a disability. The court noted that although BNSF admittedly acted on its internal policy that an applicant with Class III obesity and a BMI that equaled or exceeded 40 posed an unreasonably high risk of developing certain medical conditions in the future, the definition of physical impairment—and thus disability—under the ADA did "not include characteristic predisposition to illness or disease." Order of D. Ct. of Nov. 20, 2014, at 5-6. Because BNSF acted only on its assessment of Morriss's predisposition to develop an illness or disease in the future, it did not regard him as having a disability under the ADA. The district court therefore granted BNSF's motion for summary judgment, denied Morriss's motion for partial summary judgment, and dismissed the action with prejudice. On appeal, Morriss argues that his obesity, even without evidence of an underlying

physiological disorder or condition, is a physical impairment—and thus a disability—under the ADA and that BNSF regarded it as such. The question on appeal, therefore, is whether obesity qualifies as a disability under the ADA.

We review a grant of summary judgment *de novo*, EEOC v. Prod. Fabricators, Inc., 763 F.3d 963, 969 (8th Cir. 2014), and affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," id. (quoting Fed. R. Civ. P. 56(a)). While the nonmoving party receives the benefit of all reasonable inferences that may be drawn from the evidence, he must come forward with specific facts to show that there is a genuine issue for trial. See Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 844 (8th Cir. 2015). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial.'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The ADA makes it unlawful for a covered employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To succeed on a disability-discrimination claim under the ADA, a claimant must show that he was a "qualified individual" who suffered "discrimination" that was based on a "disability" as each of those terms is defined by the Act. See Brown v. City of Jacksonville, 711 F.3d 883, 888 (8th Cir. 2013). This appeal turns on the meaning of term "disability," which the ADA defines as "(A) a physical . . . impairment that substantially limits one or more major life activities . . . (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). Morriss challenges only the district court's adverse grant of summary judgment on his claim that BNSF regarded him as having a physical impairment. An individual is "regarded as having such an impairment" if he establishes that he was discriminated against "because of an actual or perceived physical . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). Thus to prevail on his "regarded as" claim,

Morriss was required to show that his obesity was an actual or perceived physical impairment.

The ADA does not define physical impairment, but the EEOC, exercising its statutory authority to issue regulations implementing the ADA, see id. § 12205a, has defined the term to mean "[a]ny *physiological disorder or condition*, cosmetic disfigurement, or anatomical loss *affecting one or more body systems*, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine," 29 C.F.R. § 1630.2(h)(1) (emphasis added). Under the plain language of this definition, obesity is not a physical impairment unless it is a physiological disorder or condition and it affects a major body system.

Morriss contends that this definition of physical impairment cannot be read in isolation and must be considered in light of EEOC interpretive guidance, which refers to weight and states:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term *"impairment" does not include physical characteristics such as* eye color, hair color, left-handedness, or height, *weight*, or muscle tone that are *within "normal" range and are not the result of a physiological disorder*. The definition, likewise, does not include characteristic predisposition to illness or disease. *Other conditions*, such as pregnancy, *that are not the result of a physiological disorder are also not impairments*.

Appendix to Part 1630—Interpretive Guidance on Title I of the ADA (interpretive guidance), 29 C.F.R. Pt. 1630, App'x § 1630.2(h) (emphasis added).

Morriss interprets this language to mean that an individual's obesity must be the result of a physiological disorder only if his weight is within "'normal' range." See

-6-

BNSF Ry. Co. v. Feit, 281 P.3d 225, 231 (Mont. 2012) (construing EEOC interpretive guidance and concluding, "Obesity that is not the symptom of a physiological disorder or condition may constitute a 'physical . . . impairment' . . . if the individual's weight is outside 'normal range' and affects 'one or more body systems' as defined in 29 C.F.R. § 1630.2(h)(1) (2011)."). We disagree with this reading of the interpretative guidance. Instead, like the district court, we conclude that a more natural reading of the interpretive guidance is that an individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range *and* it occurs as the result of a physiological disorder. Both requirements must be satisfied before a physical impairment can be found. In other words, even weight outside the normal range—no matter how far outside that range—must be the result of an underlying physiological disorder to qualify as a physical impairment under the ADA.

A reading of the EEOC interpretive guidance in its entirety supports this conclusion. As set forth above, in addition to the language regarding obesity, the interpretive guidance also provides that "[o]ther conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments." 29 C.F.R. Pt. 1630, App'x § 1630.2(h). As with the physical characteristics of height, weight, and muscle tone, "other conditions" are not "impairments" unless they are the result of an underlying physiological disorder. Taken as a whole, the relevant statutory and regulatory language makes it clear that for obesity to qualify as a physical impairment—and thus a disability—under the ADA, it must result from an underlying physiological disorder or condition.

Two circuit courts have reached this result. In EEOC v. Watkins Motor Lines, Inc., 463 F.3d 436, 442-43 (6th Cir. 2006), the Sixth Circuit rejected the argument raised here, namely, that weight far outside the normal range may constitute a physical impairment even in the absence of an underlying physiological disorder or condition. The Sixth Circuit held that, "consistent with the EEOC's own definition, . . . to

constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition." Id. at 443. The court rejected the EEOC's assertion that a physical impairment could be shown either by "weight problems caused by a physiological condition" or by "morbid obesity . . . regardless of the cause." Id. at 441. After citing to the EEOC interpretive guidance explaining that physical characteristics like weight are excluded from the definition of physical impairment, the court stated:

> We decline to extend ADA protection to all "abnormal" (whatever that term may mean) physical characteristics. To do so "would make the central purpose of the statutes, to protect the disabled, incidental to the operation of the 'regarded as' prong, which would become a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the statutes were passed." Francis v. City of Meriden, 129 F.3d 281, 287 (2d Cir. 1997). Thus, consistent with the EEOC's own definition, we hold that to constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition.

Watkins Motor Lines, 463 F.3d at 443. The Second Circuit reached the same conclusion, reasoning that obesity, by itself, does not qualify as a physical impairment because "'physical characteristics that are "not the result of a physiological disorder" are not considered "impairments" for the purposes of determining either actual or perceived disability.'" Francis v. City of Meriden, 129 F.3d 281, 286 (2d Cir. 1997) (quoting Andrews v. Ohio, 104 F.3d 803, 808 (6th Cir. 1997)). The court concluded that "obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the [ADA]." Id. Several other courts have concluded likewise. See, e.g., Wagner's Pharmacy, Inc. v. Pennington, No. 2013-SC-000541, 2015 WL 2266374, at *8 (Ky. Sept. 24, 2015) (unpublished per curiam) (interpreting Kentucky Civil Rights Act consistently with federal law and concluding under EEOC regulations that "[a]bsent a physiological cause for her morbid obesity, [plaintiff] cannot prevail"); Ivey v. D.C., 949 A.2d 607,

612-13 (D.C. 2008) (rejecting claim that obesity rendered plaintiff disabled and noting that, although morbid obesity can be considered a disability when supported by evidence that it was the result of physiological condition, no such evidence was proffered); Merker v. Miami-Dade Cnty. Fla., 485 F. Supp. 2d 1349, 1353 (S.D. Fla. 2007) (same); Marsh v. Sunoco, Inc., No. 06-CV-2856, 2006 WL 3589053, at *4 (E.D. Pa. Dec.6, 2006) (concluding that "'[p]hysical characteristics that are not the result of a physiological disorder are not considered impairments for the purposes of determining either actual or *perceived* disability'" (quoting Francis, 129 F.3d at 286)); Coleman v. Ga. Power Co., 81 F. Supp. 2d 1365, 1369-70 (N.D. Ga. 2000) (refusing to "say that morbid obesity cannot be shown to be a physical impairment in some cases," but finding that plaintiff had not made necessary showing "that his morbid obesity [was] a physiological disorder"); Fredregill v. Nationwide Agribusiness Ins. Co., 992 F. Supp. 1082, 1088-89 (S.D. Iowa 1997) ("It is not enough that [employer] perceived [claimant] as obese. He must establish both components which inhere in the definition: that [employer] regarded him as having (1) a physical impairment within the meaning of the ADA, which (2) substantially limited him in working."); cf. Cook v. R.I. Dep't of Mental Health, 10 F.3d 17, 22-25 (1st Cir. 1993) (noting that because expert testimony established that morbid obesity was the result of a physiological disorder or condition, it was a physical impairment).

Morriss argues that the decisions in Watkins Motor Lines and Francis are inapposite because those cases were decided prior to the enactment of the ADAAA, which made substantial revisions to the ADA. He cites instead post-ADAAA cases that hold that obesity is a physical impairment under the ADA—even in the absence of an underlying physiological disorder or condition. See Feit, 281 P.3d at 231 (noting that ADA, ADAAA, and EEOC interpretive guidance are persuasive authority for construing state law and holding that obesity that is not the result of a physiological disorder or condition may constitute a physical impairment under Montana Human Rights Act if weight is outside "normal range" and affects "one or more body systems"); EEOC v. Res. for Human Dev., Inc., 827 F. Supp. 2d 688, 694

(E.D. La. 2011) (construing EEOC interpretive guidance and reasoning that a physiological cause for obesity is required only when an ADA disability-discrimination claimant's weight is within the normal range). These cases cite Congress's general policy statements in the ADAAA as support for an expansive interpretation of "disability," noting that Congress expressed an intent to provide "broad coverage" of individuals with disabilities.

Congress's stated goal in enacting the ADAAA was to ensure that "[t]he definition of disability . . . be construed in favor of broad coverage of individuals under [the ADA]." 42 U.S.C. § 12102(4)(A); see also 29 C.F.R. Pt. 1630, App'x § 1630.1(c). Congress intended that the ADAAA abrogate certain Supreme Court rulings that improperly "narrowed the broad scope of protection . . . originally intended under the ADA." 29 C.F.R. Pt. 1630, App'x at Intro. (noting Congress's intent to reject the reasoning and standards imposed by the Supreme Court in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and Toyota Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), that too narrowly interpreted when an impairment "substantially limits a major life activity"). To achieve its stated goal, Congress took aim directly at judicial interpretation of the "substantially limits a major life activity" aspect of the then-current definition of "disability," and it instructed the EEOC to modify its regulations to address those concerns. Congress "expect[ed] that the EEOC [would] revise that portion of its current regulations that defines the term 'substantially limits.'" Id. at (7). In response, the EEOC revised the definition of "substantially limits" to remove the requirement that an impairment "prevent[] or significantly or severely restrict[] the individual from performing a major life activity." Id. § 1630.2(j)(1)(ii). This revision was extended to "regarded as" disabled cases, with the EEOC taking the position that "it is not necessary to determine whether an individual is 'substantially limited' in any major life activity" for "regarded as" disabled cases. Id. § 1630.2(j). The EEOC also modified its definition of "major life activity" to include not only physical activity, but certain

non-physical activities, and it further directed that "major life activity" should not be "interpreted strictly to create a demanding standard for disability." Id. § 1630.2(i).

Notably, Congress did not express any disagreement with judicial interpretations of the term "physical impairment." Congress expressly stated its intent to abrogate the Supreme Court's interpretation of "substantially limits a major life activity" in Sutton and Toyota Manufacturing, and presumably would have done the same had it intended to abrogate the interpretation of "physical impairment" in Watkins Motor Lines and Francis. See Lorillard v. Pons, 434 U.S. 575, 580 (1978) (noting that "Congress is presumed to be aware of [a] . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change"). Similarly, although Congress instructed the EEOC to revise its definitions of "substantially limits" and "major life activity" to ensure broad coverage of individuals with disabilities, it gave no instructions regarding the definition of physical impairment.[3] Instead, even after the ADAAA, "physical impairment" is defined as a physiological disorder or condition that affects a major body system. See 29 C.F.R. Pt. 1630, App'x § 1630.2(h) (noting that "Congress 'expect[s] that the current regulatory definition of [physical impairment], as promulgated by [the EEOC] will not change'" (citation omitted)). Thus, because the ADAAA did not alter that definition, pre-ADAAA case law holding that obesity qualifies as a physical impairment only if it results from an underlying physiological disorder or condition remains relevant and persuasive. Although Morriss asserts that the ADAAA's overarching policy objective to provide "broad coverage" points toward a more expansive interpretation of physical impairment, the ADAAA's policy goal is itself constrained by language that limits the intended broad coverage to the "extent permitted by the terms of [the ADA]." Id.

---

[3]The only change in the EEOC's definition of physical impairment after enactment of the ADAAA was the addition of the immune and circulatory body systems, a change that has no effect on this case. Compare 29 C.F.R. § 1630.2(h)(1) (2010), with 29 C.F.R. § 1630.2(h)(1) (2014).

§ 1630.1(c).[4]  Under both the ADA and the EEOC regulations and interpretive guidance, a "physical impairment" must be the result of an underlying physiological disorder or condition.  The ADAAA's general policy statement cannot trump this plain language.

Morriss also cites a provision in the EEOC interpretive guidance that says that Congress intended that the "threshold" question whether an "impairment is a disability" under the ADA "'should not demand extensive analysis.'"  Id. § 1630.2(g). He contends that this statement supports an expansive reading of the term "disability." Again, we disagree.  Congress may have expressed an intent to apply a less rigorous standard to the question whether an impairment "substantially limits a major life activity," but the EEOC's hoped-for less restrictive analysis of whether an impairment exists is cut from whole cloth, for an individual must first establish that he has a qualifying impairment before the less "extensive analysis" is applied to determine whether the impairment "substantially limits a major life activity" requirements.

Morriss contends that his obesity, in and of itself, is a physical impairment because it has been labeled "severe," "morbid," or "Class III" obesity.  This contention garners no support from the EEOC regulations, which state that weight is merely a physical characteristic—not a physical impairment—unless it is both outside the normal range *and* the result of an underlying physiological disorder.  As

---

[4]The EEOC contends in its amicus brief that its post-ADAAA interpretation of "physical or mental impairment" is entitled to deference.  The agency has not modified its regulations or interpretive guidance construing these terms, however, and its contradictory position in this litigation thus is not entitled to deference.  See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212 (1988) ("We have never applied [Chevron deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice."); see also Smith v. Aegon Cos. Pension Plan, 769 F.3d 922, 929 (6th Cir. 2014) (refusing to defer "to a line of reasoning that an agency could have, but has not yet, adopted" except in amicus briefs (citation omitted)).

previously noted, Morriss has provided no evidence to prove that his obesity is the result of a physiological disorder, and so he instead cites the EEOC Compliance Manual, which states that, while "normal deviations" in weight "that are not the result of a physiological disorder are not impairments[,] . . . [a]t extremes, . . . such deviations may constitute impairments." EEOC Compliance Manual § 902.2(c)(5). The Compliance Manual also states that "severe obesity," namely, "body weight more than 100% over the norm," is an impairment. Id.

We first note that this Compliance Manual pronouncement directly contradicts the plain language of the Act, as well as the EEOC's own regulations and interpretive guidance, which, as previously explained, all define "physical impairment" to require an underlying physiological disorder or condition. We next note that the argument raised by Morriss was considered and rejected by the Sixth Circuit in Watkins, in which the court concluded that morbid obesity was not a physical impairment in and of itself merely because it fell further outside the normal range than some other category of obesity. See 463 F.3d at 443 (holding that "consistent with the EEOC's own definition" of impairment, "a person's obesity, even morbid obesity, must be the result of a physiological condition"). Moreover, even if we accepted Morriss's argument that "body weight more than 100% over the norm" qualifies as a physical impairment even without an underlying physiological disorder or condition, his claim would fail. "Norm" as used in this context refers to the average weight of the general population. According to the Centers for Disease Control and Prevention (CDCP), the mean weight, i.e., the norm, for a man of Morriss's age (37 at the relevant time) is 199.5 pounds.[5] Weight "more than 100% over" 199.5 pounds is weight of at least 399 pounds. Morriss did not weigh 399 pounds when BNSF conducted its two physical

---

[5]Centers for Disease Control and Prevention, Anthropometric Reference Data for Children and Adults: United States 2007-2010, at 10 tbl.6 (2012), http://www.cdc.gov/nchs/data/series/sr_11/sr11_252.pdf (reporting data from the National Health and Nutrition Examination Survey).

examinations of Morriss or when it revoked its offer of employment. Thus, Morriss did not have a physical impairment even under his suggested definition of the term.

In sum, we conclude that for obesity, even morbid obesity, to be considered a physical impairment, it must result from an underlying physiological disorder or condition. This remains the standard even after enactment of the ADAAA, which did not affect the definition of physical impairment. Because Morriss failed to produce evidence that his obesity was the result of an underlying physiological disorder or condition, the district court properly concluded that Morriss did not have a physical impairment under the ADA.

We turn, then, to Morriss's argument that BNSF discriminated against him because it perceived him has having a physical impairment. See 42 U.S.C. § 12102(3)(A). Morriss argues that BNSF refused to hire him because it considered his obesity to present an unacceptably high risk that he would develop certain medical conditions in the future, and that BNSF therefore perceived him as having a current physical impairment. We disagree. The ADA prohibits an employer from discriminating against an individual on the basis of a presently existing "physical impairment" as that term is defined under the Act. See id. § 12102(A), (C) (defining disability as a "physical impairment" or "being regarded as having *such* an impairment" (emphasis added)). But the ADA does not prohibit an employer from acting on some other basis, *i.e.*, on its assessment that although no physical impairment currently exists, there is an unacceptable risk of a future physical impairment. An individual has a "disability" under the ADA if he has "a physical . . . impairment"or is "regarded as having *such* an impairment." 42 U.S.C. § 12102(1)(A),(C) (emphasis added). In other words, as a threshold matter, Morriss was required to show that BNSF perceived his obesity to be a condition that met the definition of "physical impairment." The ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment as defined under the Act.

-14-

Instead, the plain language of the ADA prohibits actions based on an existing impairment or the perception of an existing impairment. As noted by the district court, the EEOC's own interpretive guidance specifically states that "the definition [of impairment] . . . does not include characteristic predisposition to illness or disease." 29 C.F.R. Pt. 1630, App'x § 1630.2(h).

Morriss did not produce evidence that BNSF perceived his obesity to be an existing physical impairment—in fact, the questionnaire and treatment records that Morriss and his doctor provided to BNSF notified the company that Morriss was *not* suffering from any physical impairment. The physical examinations conducted by BNSF revealed that Morriss's BMI exceeded BNSF's internal limits for safety-sensitive positions, but those examinations did not reveal that Morriss had a physical impairment. Indeed, it was "undisputed that Morriss 'was denied employment . . . not because of any then current health risk identified by BNSF . . . , but because BNSF believed by having a BMI of 40, [Morriss] would or could develop such health risks in the future.'" Order of D. Ct. of Nov. 20, 2014, at 5 (quoting Plaintiff's Supporting Brief at 11). The district court properly rejected Morriss's argument that BNSF perceived him as having a physical impairment.

The judgment is affirmed.

_____