# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1367

_____

David Meza

*Plaintiff - Appellant*

v.

Union Pacific Railroad Co.

*Defendant - Appellee*

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 11, 2025
Filed: July 25, 2025

_____

Before LOKEN, BENTON, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

What does it take for an employer to "regard[]" an employee as disabled under the Americans with Disabilities Act? 42 U.S.C. § 12102(1)(C). It may have happened here when Union Pacific decided that David Meza's traumatic brain injury presented an unacceptable risk of future seizures. For that reason, we vacate the grant of summary judgment to Union Pacific and remand for further proceedings.

I.

Meza had worked for Union Pacific for over twenty years when he had a serious non-job-related motorcycle accident. It required him to spend several days in the hospital recovering from a brain hemorrhage. Fortunately for him, his treating physicians thought his brain injury would not have lasting effects. One, a radiologist, determined from an MRI that "no specific or acute intracranial abnormality" existed and only "a small amount of fluid in the left mastoid air cells" remained. From there, his neurologist cleared him to return to his regular work and life activities. In his view, Meza had made a "full recovery," at least with respect to his "dizziness, vertigo, and skull fracture."

Union Pacific was not as sure Meza was ready to return. Its medical examiner feared that his brain injury could cause unpredictable seizures—a conclusion consistent with medical guidelines from the Federal Motor Carrier Safety Administration. Presumably concerned about the danger of an on-the-job seizure with heavy machinery around, the examiner recommended restricting Meza's work activities for five years. Unfortunately, the restrictions ruled out a return to his old position, which left him searching for another job in the meantime.

Meza sued for discrimination. His theory was that Union Pacific suspended him because it "regarded [him] as having [a] . . . physical or mental impairment," a type of disability discrimination. *Id.* § 12102(3)(A); *see id.* § 12102(1)(C). Given the length of the suspension, he believed that Union Pacific treated him differently because of a perceived disability, rather than out of any risk to himself or others. He

eventually returned to Union Pacific, but requests back pay for the five years he missed. *See id.* § 12112(a).

Meza's claim did not survive summary judgment. The district court concluded that Union Pacific had not "regarded" him as *currently* disabled. *Id.* § 12102(1)(C). Rather, it had placed restrictions on him out of concern about how the injury would affect him in the future. Meza believes Union Pacific illegally discriminated against him either way.

## II.

We review the grant of summary judgment de novo, "viewing the record in the light most favorable to [Meza] and drawing all reasonable inferences in [his] favor." *Morgan-Tyra v. City of St. Louis*, 89 F.4th 1082, 1085 (8th Cir. 2024). Summary judgment is "appropriate" only "when the evidence . . . shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Black v. Swift Pork Co.*, 113 F.4th 1028, 1031 (8th Cir. 2024) (citation omitted).

## A.

This appeal is all about what Union Pacific believed. Under the ADA, a plaintiff can state a disability-discrimination claim even if the employer "regard[s] [him] as" disabled. 42 U.S.C. § 12102(1)(C). Unlike suits based on a present "physical or mental impairment," regarded-as claims do not require an employee's perceived disability to place a limit on "a major life activity." *Id.* § 12102(3)(A). In Meza's view, Union Pacific's stated reason for sidelining him—the possibility that he would suffer seizures following a traumatic brain injury—was all but an admission by the company that it kept him out of work because it regarded him as disabled. Under a regarded-as theory, a belief is enough.

The report from Union Pacific's medical examiner supports Meza's argument. One part of it discusses a chemical "alter[ation]" and "injury" to Meza's brain that would result in an "ongoing[,] unacceptably increased risk for seizures and other neurologic events." A reasonable jury could interpret this passage as creating a perception among Union Pacific's decisionmakers that his brain had become "impair[ed]." *Id.* That is, the accident had "[d]iminished, damaged, or weakened" it. *The American Heritage Dictionary of the English Language* 878 (4th ed. 2000) (defining "impaired"); *accord Webster's Third New International Dictionary* 1131 (2002) (adding "diminish[ed] in quantity, value, excellence, or strength" as a possible definition).

Whether his brain was truly impaired makes no difference. What is important is that, based on the report, Union Pacific may have thought it was and acted on its belief by imposing work restrictions. *See Sanders v. Union Pac. R.R. Co.*, 108 F.4th 1055, 1060–61 (8th Cir. 2024) (holding that a "*concern* that [an employee's] heart was impaired" was enough for the employer to have "regarded [him] as being disabled" (emphasis added)); *see also Lewis v. City of Union City*, 934 F.3d 1169, 1182 (11th Cir. 2019) (observing "the common[-]sense principle that an employer that takes an adverse action because it fears the consequences of an employee's medical condition has regarded that employee as disabled"). Through their impact on the "terms, conditions, [or] privileges" of his employment, a jury could find that Union Pacific violated the ADA. 42 U.S.C. § 12112(a).

Union Pacific has a different view of the evidence. It interprets the medical examiner's report as merely a warning that seizures may impair him *later*. For support, it relies on *Morriss v. BNSF Railway Co.*, which involved an obese man who applied for a railroad job. 817 F.3d 1104, 1113 (8th Cir. 2016). The company declined to hire him because it "perceived . . . his obesity" as a "characteristic" that could cause him to "develop . . . health risks in the future." *Id.* We concluded that his claim could not succeed because the company did not discriminate against him "on the basis of a *presently existing* . . . impairment . . . or the perception of" one. *Id.* (emphasis added).

-4-

*Morriss* is distinguishable from this case in one important way. The record there showed that the company feared that a current "physical *characteristic*" could "eventually lead to a[n] . . . impairment." *Id.* (emphasis added). Here, by contrast, there is a genuine issue of material fact about whether the chemical alteration the examiner identified was itself an impairment, even if it would only be clear to others if Meza began having seizures. Like the heart condition from *Sanders*, the perceived brain changes here could qualify as an existing physical impairment. *See Sanders*, 108 F.4th at 1060–61; *see also* 42 U.S.C. § 12102(3)(A); *cf. id.* § 12102(4)(D) (establishing that an *actual* impairment that "is episodic or in remission" still counts if it "would substantially limit a major life activity when active").

Changing one simple fact shows why. Suppose that Meza had epilepsy rather than a traumatic brain injury. Both can cause unpredictable seizures. *See* 3 *The Gale Encyclopedia of Medicine* 1859 (6th ed. 2020) (explaining that "epilepsy" can lead to "[s]eizures . . . spontaneously[,] without any apparent cause"). No one doubts that epilepsy is a disability, *see* 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should be easily concluded that . . . epilepsy substantially limits neurological function."), so why would Meza's condition be any different? At this stage, at least, Union Pacific has no answer.

## B.

We are remanding for further proceedings, "[b]ut take note of what we do not say." *Washington v. City of St. Louis*, 84 F.4th 770, 774 (8th Cir. 2023). We are not ruling out the possibility that the district court could grant summary judgment on another ground it "did not reach." *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 887 (8th Cir. 2014). Open questions include whether Meza continued to be "qualified" for the job after the motorcycle accident, 42 U.S.C. § 12112(a); *see Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025), and whether his injury resulted in a "'direct threat' to the health or safety of others in the workplace," *Sanders*, 108 F.4th at 1062 (quoting 42 U.S.C. § 12113(b)). The court

can "consider th[ese] issue[s]" and others on remand.  *United Fire*, 751 F.3d at 887 (citation omitted).

## III.

We accordingly vacate the district court's judgment and remand for further proceedings.

_____