[Cite as *Summit Cty. Children Servs. v. Ohio Civ. Rights Comm.*, 2025-Ohio-5402.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SUMMIT COUNTY CHILDREN
SERVICES

    Appellant

    v.

OHIO CIVIL RIGHTS COMMISSION, et
al.

    Appellee

C.A. No.    31312

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2023-10-3782

DECISION AND JOURNAL ENTRY

Dated: November 26, 2025

SUTTON, Judge

**{¶1}** Respondent-Appellant Summit County Children Services ("SCCS") appeals the judgment of the Summit County Court of Common Pleas affirming the order of Petitioner-Appellee the Ohio Civil Rights Commission ("the Commission"). For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** Complainant-Appellee Deborah Webb was employed by SCCS. Ms. Webb had surgery on her right foot in early 2020. By that summer, Ms. Webb was still not able to return to work in the time period initially anticipated due to her foot not healing as expected, so Ms. Webb requested an accommodation to perform sedentary work from home. SCCS declined to provide this accommodation. SCCS offered to allow Ms. Webb to take additional leave which would be

without pay and without medical benefits. In addition, SCCS informed Ms. Webb that they would be posting her position and would not guarantee that she would be able to return to her position. Instead, in July 2020, Ms. Webb decided to retire because she needed income and health insurance.

{¶3} A few weeks later, Ms. Webb filed a Charge of Discrimination with the Commission alleging she was disabled and had been discriminated against by SCCS. The Commission filed a complaint against SCCS alleging that SCCS failed to accommodate Ms. Webb's disability and had constructively discharged her in violation of R.C. 4112.02.

{¶4} The complaint was heard by an Ohio Civil Rights Commission Administrative Law Judge ("ALJ"). Following the evidentiary hearing and submission of post-hearing briefs, the ALJ issued findings of fact, conclusions of law, and recommendations (report and recommendations), recommending that the Commission order SCCS to "Cease and Desist from all discriminatory practices in violation of R.C. Chapter 4112[.]" In addition, the ALJ recommended that the Commission order SCCS to: make an offer of reinstatement to Ms. Webb; pay Ms. Webb $79,565.60 in back pay from July 2, 2020 through February 3, 2022 and $958.80 per week until an offer of reinstatement was made; and receive training on Ohio anti-discrimination laws.

{¶5} SCCS filed objections to the ALJ's report and recommendations. The Commission adopted the ALJ's report and recommendations and issued a Cease and Desist Order as recommended by the ALJ. SCCS filed a petition to review the order of the Commission in the Summit County Court of Common Pleas pursuant to R.C. 4112.06, which affirmed the Commission's Cease and Desist Order.

{¶6} SCCS has appealed, raising one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF RESPONDENT-APPELLANT BY AFFIRMING THE OHIO CIVIL RIGHTS COMMISSION'S CEASE AND DESIST ORDER, WHICH IS NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW.**

{¶7} In its sole assignment of error, SCCS argues the trial court abused its discretion by affirming the Commission's Cease and Desist Order. SCCS specifically argues the trial court erred by determining that: (1) the standards in the federal Americans with Disabilities Act ("ADA") Amendments Act of 2008 ("ADAAA") apply to discrimination claims brought exclusively under the Ohio Civil Rights Act ("OCRA"); (2) Ms. Webb was constructively discharged from her employment; and alternatively; (3) the Commission's back pay award should not be offset by Ms. Webb's post-resignation pension earnings.

{¶8} R.C. 4112.06 provides that any respondent claiming to be aggrieved by a final order of the Ohio Civil Rights Commission may obtain judicial review of the Commission's order by filing a petition in the court of common pleas. R.C. 4112.06(B) provides in part:

> Thereupon the commission shall file with the court a transcript of the record upon the hearing before it. The transcript shall include all proceedings in the case, including all evidence and proffers of evidence. The court shall thereupon have jurisdiction of the proceeding and of the questions determined therein, and shall have power to grant such temporary relief, restraining order, or other order as it deems just and proper and to make and enter, upon the record and such additional evidence as the court has admitted, an order enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the commission or remanding for further proceedings.

For a review by the court of common pleas, R.C. 4112.06(E) provides: "[t]he findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a

whole." *See also Plumbers and Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 200 (1981).

{¶9} This Court's review is limited to determining whether the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence to support the Commission's order." *Ohio Civ. Rights Comm. v. Case W. Res. Univ.* 76 Ohio St.3d 168, 177 (1996).

**The Evidence**

{¶10} Ms. Webb testified at the hearing before the ALJ that following her surgery, she was unable to walk any distance due to the pain in her foot, and she could not shop, cook, care for herself, or drive. Prior to her surgery, Ms. Webb's job duties included inputting medication information about children in the custody or care of SCCS, enrolling them in school, and entering drug test results, although in prior years, her position did require driving children to appointments, and caring for and supervising children at the agency. Ms. Webb's job duties in the months prior to her surgery were exclusively in the office, sedentary, and with the proper equipment, could be performed from home.

{¶11} Ms. Webb wanted to work and testified she could do the work she was doing prior to her surgery from home if she was provided with her computers and scanner. The accommodation Ms. Webb asked for was a work situation that was not uncommon and had been utilized by SCCS during the COVID-19 pandemic. SCCS denied Ms. Webb's request. The only offer SCCS made in response to Ms. Webb's request for an accommodation was additional leave, which would be unpaid and would leave her without a paycheck and medical insurance. In addition, SCCS told her it was going to post her position, leading her to believe she would not have a job. Ms. Webb testified, "[i]n my 20 years in working at Children Services, I've never seen

them post a job for somebody off on medical leave ever. So that meant that was the end of my job." It was unclear when Ms. Webb's foot would heal to the point where she could walk or drive. In light of this, Ms. Webb believed she had no choice but to retire so she would have some income as well as medical insurance from the Ohio Public Employee Retirement System ("OPERS").

**ADAAA v. OCRA Standards Concerning "Disability"**

{¶12} SCCS argues the term "disability" should be interpreted using pre-ADAAA standards. We disagree.

{¶13} The OCRA is codified in R.C. Chapter 4112. R.C. 4112.08(A)[1] provides that R.C. Chapter 4112 "shall be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter shall not apply." The purposes of R.C. Chapter 4112 include remedying the discharge of employees with disabilities without just cause. *See* R.C. 4112.02(A). In addition, employers must make reasonable accommodations to the disability of an employee. Adm.Code 4112-5-08(E). Adm.Code 4112-5-01, authorized by R.C. 4112.04, which sets forth the powers and duties of the Commission, provides:

> The purpose of commission rules and regulations on discrimination is to assure compliance with the provisions of Chapter 4112. of the Revised Code. Commission rules express the Ohio civil rights commission's interpretation of language in Chapter 4112. of the Revised Code and indicate factors which the commission will consider in determining whether or not there has been a violation of the law. Commission rules apply to every action which falls within the coverage of Chapter 4112. of the Revised Code, and are not intended to either expand or contract the coverage of Chapter 4112. of the Revised Code.

{¶14} SCCS argues the trial court abused its discretion by misapplying the law to "undisputed facts" of the case, citing this Court's decision in *Sheffield Village v. Ohio Civ. Rights Comm.*, 2000 WL 727551, * 4 (9th Dist. June 7, 2000). SCCS specifically argues the Commission

---

[1] The version of R.C. 4112.08 in effect in 2020 did not have a subsection (A) but contained the same language as the current version.

and trial court erred by using federal ADAAA standards to determine whether Ms. Webb was substantially limited in one or more major life activities and therefore "disabled" pursuant to R.C. 4112.01(A)(13) instead of using pre-ADAAA standards.

{¶15}   R.C. 4112.01(A)(13) provides:

"Disability" means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

{¶16}   SCCS focuses its argument on the phrase "substantially limits," which is not further defined in the Ohio Revised Code.  Because the term 'substantially limits' is not defined in the Ohio statutes or regulations, Ohio courts "look to federal law to guide our analysis."  *Snyder v. U.S. Bank,* 2024-Ohio-2727, ¶ 39 (1st Dist.).

{¶17}   SCCS argues that when the United States Congress amended the ADA in 2008, Ohio did not likewise amend the Ohio Civil Rights Act, therefore, the definition of "substantially limits," should remain as it was prior to the ADAAA for purposes of the OCRA.

{¶18}   "When congress amended the ADA, it did not alter the definition of disability." *Anderson v. Accuscripts Pharmacy, L.L.C.,* 2022-Ohio-1663, ¶ 51 (8th Dist.).  In federal law, 42 U.S.C. 12102(1)(A) provides in part: "The term 'disability' means . . .  a physical or mental impairment that substantially limits one or more major life activities[.]"  Ohio law, R.C. 4112.01(A)(13), provides in part, "'Disability' means a physical or mental impairment that substantially limits one or more major life activities[.]"  Therefore, the definition of "disability" under federal and Ohio law are the same and include two prongs: (1) a physical or mental impairment; (2) that substantially limits one or more major life activities.

{¶19}   The ADAAA and the Code of Federal Regulations enacted pursuant to the ADAAA clarify that "disability" is not meant to be a demanding standard.  42 U.S.C. 12102(4) and 29 C.F.R. §1630.2(j)(1)(i).  Indeed, in amending the ADA, Congress stated, "the Nation's *proper* goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[.]" (Emphasis added.) 42 U.S.C. 12101(a)(7).  *See, also* 29 C.F.R. Pt. 1630, App'x ("the holdings of several Supreme Court cases sharply narrowed the broad scope of protection Congress originally intended under the ADA, thus eliminating protection for many individuals whom Congress intended to protect.").  Congress intended that the ADAAA abrogate certain Supreme Court rulings that improperly narrowed the broad scope of protection originally intended under the ADA, specifically the United States Supreme Court's interpretation of the phrase "substantially limits a major life activity."  *Morriss v. BNSF Ry. Co.,* 817 F.3d 1104, 1110-1111 (8th Cir. 2016).  For example, in *Toyota Motor Mfg., Kentucky. Inc. v. Williams*, 534 U.S. 184, 185 (2002), the United States Supreme Court had required a high degree of functional restriction that prevents or severely restricts an individual from performing a major life activity, a standard that Congress did not intend.  Thus, Congress did not expand the definition of disability by enacting the ADAAA.  It clarified the definition.

{¶20}   Nevertheless, SCCS argues the "substantially limits" prong of the definition of disability must be interpreted using pre-ADAAA standards.  But, by arguing the term "substantially limits" must be interpreted "to create a demanding standard for qualifying as disabled under the ADA" as it existed pre-ADAAA, SCCS ignores both the intent of Congress in amending the ADA, and the mandate of R.C. 4112.08 that R.C. Chapter 4112 "shall be construed *liberally* for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter *shall not apply*."  (Emphasis added.)  And again, the purposes of the OCRA include

remedying the discharge of employees with disabilities without just cause and ensuring employers make reasonable accommodations so an employee with a disability can continue to work. Demanding a high bar for even meeting the definition of "disability," by someone who cannot walk, shop, cook, or drive does not accomplish the purposes of the OCRA.

{¶21} The record shows Ms. Webb had a medical condition of her right foot, a bunion and hammer toe, which required surgery. After surgery, she continued to experience pain and swelling. This meets the definition of the "physical impairment" prong of disability. Post-surgery and up to the time she requested to do sedentary work from home as a reasonable accommodation, Ms. Webb could barely walk, and could not drive, shop, cook, or care for herself. If she could not drive or walk for any distance, she could not physically come into the office to work.

{¶22} Upon review of the record in this matter, this Court cannot conclude the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence to support the Commission's determination that Ms. Webb had a disability.

**Constructive Discharge**

{¶23} Constructive discharge occurs when an employer's actions make working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. *Mauzy v. Kelly Servs., Inc*. 75 Ohio St.3d 578, paragraph four of the syllabus (1996). Where an employee chooses retirement when continued employment with the employer is intolerable or uncertain, the doctrine of constructive discharge applies. *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1128 (6th Cir. 1998).

{¶24} SCCS argues because it offered Ms. Webb an accommodation in the form of additional leave, she was not constructively discharged. Ms. Webb argues that SCCS rejecting her request to work from home and instead offering her unpaid leave as a condition of continued

employment was not an accommodation and made continued employment with SCCS intolerable. "[R]equested accommodations are reasonable only if they 'address a key obstacle preventing [the employee] from performing a necessary function of' the job." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). A disabled employee cannot ask to work from home for convenience. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020). Here, however, Ms. Webb's requested accommodation was not merely for convenience. She could not stand for long, walk very far, or drive. Allowing her to work from home would address a key obstacle to performing her job.

{¶25} Where an employee alleges constructive discharge due to failure to provide a reasonable accommodation, courts have asked whether it was foreseeable the employee would resign when denied a reasonable accommodation. *Caldwell v. Niles City Schools*, 2021-Ohio-1543, ¶ 64 (11th Dist.), citing *Tally v. Family Dollar Stores Ohio, Inc.,* 542 F.3d 1099, 1107 (6th Cir. 2008). "A constructive discharge claim 'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Caldwell* at ¶ 65, quoting *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004). In *Caldwell*, the employee, a teacher, requested to use her scooter in the classroom as an accommodation due to her physical disabilities. Her employer denied this request, which she argued made her working conditions so intolerable she was compelled to resign. *Id.* at ¶ 71. Based on this evidence, in the context of reviewing a grant of summary judgment in favor of the employer, the *Caldwell* court determined there was a genuine issue of material fact concerning whether Ms. Caldwell was constructively discharged. *Id.* at ¶ 78. While procedurally different than the case before us, the *Caldwell* analysis is nonetheless instructive.

{¶26} In addition, federal and Ohio courts have recognized a duty on the part of the employer to interact with the employee in a good faith effort to seek reasonable accommodation. *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653 (10th Dist. 2000.) In our case, Ms. Webb was faced with a choice: to take additional leave without pay and medical benefits, or to retire and receive some income and medical coverage from OPERS. Ms. Webb wanted to return to work, but SCCS did not attempt to negotiate an accommodation or engage in an interactive process that would allow Ms. Webb to return to work. SCCS's offer of additional unpaid leave in response to her request for an accommodation to work, while posting her job, was not an accommodation at all and the record does not show a good faith effort on the part of SCCS to negotiate a reasonable accommodation.

{¶27} SCCS also argues that according to the job description for Ms. Webb's position, her duties included caring for children and driving, which she could not do from home. However, the record shows immediately prior to her surgery, Ms. Webb was doing sedentary office work. Driving children and supervising children were not part of her actual duties. Ms. Webb testified that prior to her surgery, on a rare occasion, a school may have wanted someone from the agency to come to the school in person to enroll a child, but because schools were not in-person in 2020 due to the pandemic, this would not be required. Therefore, Ms. Webb could perform her actual duties from home and the record reflects other SCCS employees were allowed to work remotely during the COVID-19 pandemic.

{¶28} Upon review, this Court cannot conclude the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence to support that, under the facts of this case, Ms. Webb was constructively discharged.

**Back Pay**

{¶29}   SCCS argues Ms. Webb's OPERS retirement income should have been deducted from the award of back pay as "earnings."  R.C. 4112.05(G)(1)(a) provides in part:

> If, upon all reliable, probative, and substantial evidence presented at a hearing under division (B) of this section, the commission determines that the respondent has engaged in, or is engaging in, any unlawful discriminatory practice, whether against the complainant or others, the commission shall state its findings of fact and conclusions of law and shall issue and, subject to the provisions of Chapter 119. of the Revised Code, cause to be served on the respondent an order requiring the respondent to do all of the following:
>
> . . .
>
> (ii) Take any further affirmative or other action that will effectuate the purposes of this chapter, including, but not limited to, hiring, reinstatement, or upgrading of employees with or without back pay, or admission or restoration to union membership[.]
>
> . . .
>
> If the commission directs payment of back pay, it shall make allowance for interim earnings.

Similarly, R.C. 4112.051(H)(2)(b) provides if the Commission's order requires back pay, the Commission "shall take into account earnings collected during the resolution of the complaint."

{¶30}   In its analysis, the trial court framed the issue as, "whether 'retirement benefits' constitute earnings under R.C. [R.C. Chapter] 4112."

{¶31}   OCRC and Ms. Webb argue the OCRA's purposes include deterring unlawful discriminatory practices and not deducting retirement income fulfills that purpose.  Concerning deducting unemployment compensation from a back pay award, the Supreme Court of Ohio has stated, "R.C. 4112.05 attempts not only to compensate victims of unlawful discrimination and

make the victim whole, but also to deter discrimination from occurring in the first place." *Ohio Civ. Rights Comm. v. Ingram*, 69 Ohio St.3d 89, 95 (1994).

{¶32} R.C. Chapter 4112 specifically states an allowance for interim "earnings" shall be made and taken into account when making an award of back pay. "Earnings" are not defined in R.C. Chapter 4112. In common usage, "earnings" are defined as "something (such as wages) earned." www.merriam-webster.com/disctionary/earnings. The Cambridge Dictionary defines "earnings" as "the amount of money that someone is paid for working." https://dictionary.cambridge.org/us/dictionary/english/earnings. These definitions do not specifically include retirement income. Had the Ohio General Assembly wanted retirement or other *income* to be taken into account when the Commission awarded back pay pursuant to R.C. 4112.05 and R.C. 4112.051, it could have stated that "interim income" be taken into account. These statutes specifically require "interim earnings" and "earnings collected during the resolution of the complaint" be taken into account.

{¶33} Based on the foregoing, this Court cannot conclude the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence to support the Commission's order that did not deduct Ms. Webb's OPERS income from the award of back pay.

{¶34} Because the trial court did not abuse its discretion in finding there was reliable, probative, and substantial evidence to support that Ms. Webb was disabled, that she was constructively discharged, and that she was entitled to backpay that did not deduct her OPERS income, SCCS's assignment of error is overruled.

III.

{¶35} For the forgoing reasons, the assignment of error of Summit County Children Services is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, J.
CONCURS.

FLAGG LANZINGER, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOHN N. CHILDS, DANIEL J. RUDARY, and BRYAN E. MEEK, Attorneys at Law, for Appellant.

DAVE YOST, Attorney General, and MELISSA S. BEIL, Assistant Attorney General, for Appellee.

KIMBERLY L. OLIVER, and EDWARD L. GILBERT, Attorneys at Law, for Appellee.